# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3447 | **DATE** | 8/27/2003 |
| **CASE TITLE** | OCP Acquisition d/b/a Arctic Zone vs. Ingear Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment that the accused coolers infringe the '402 Patent [#30] is **granted**. Defendant's Motion to Strike [#37] is **granted**. Defendant's Motion for Summary Judgment that the claims of the patent are invalid under 35 U.S.C. §§102(b) and 103 is **denied**. Status hearing set for **9/10/03 at 9:00 a.m.** AK

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 2 | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | AUG 2 8 2003 | | | |
| | Notified counsel by telephone. | | | | docketing deputy initials | 47 |
| | Docketing to mail notices. | | | | 8/27/2003 | |
| | Mail AO 450 form. | | | | date mailed notice | |
| | Copy to judge/magistrate judge. | | | | | |
| | courtroom deputy's initials | | | | FT/ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OCP ACQUISITION CORP.,  )
d/b/a ARCTIC ZONE,      )
                        )   Case No.: 02 C 3447
         Plaintiff,     )
                        )
    vs.                 )   Magistrate Judge
                        )   Arlander Keys
INGEAR CORPORATION,     )
                        )       **DOCKETED**
         Defendant.     )
                            **AUG 2 8 2003**

## MEMORANDUM OPINION AND ORDER

This is a patent case involving softwalled, foldable
coolers. The plaintiff, OCP Acquisition Corp., doing business as
Arctic Zone, holds United States Patent No. 6,068,402 (the '402
Patent), which, in general terms, discloses a foldable cooler;
Arctic Zone manufactures and sells coolers embodying the
invention disclosed in the patent. In this lawsuit, Arctic Zone
accuses the defendant, Ingear Corporation, of infringing the '402
Patent by making and selling foldable coolers that embody the
patented invention.

The case is before the Court on the parties' motions for
summary judgment: Arctic Zone seeks summary judgment that
Ingear's coolers infringe the patent, and Ingear seeks summary
judgment that the '402 Patent is invalid. For the reasons set
forth below, the Court finds that Arctic Zone is entitled to

summary judgment on its infringement claim, but that issues of fact preclude the entry of summary judgment on Ingear's invalidity claim.

## FACTS & PROCEDURAL HISTORY

Coolers, in one form or another, have been around for a long time, long before the '402 Patent was issued on May 30, 2000. According to the Background of the Invention section of the '402 Patent, "[p]ortable coolers for transporting food and beverages are very popular due to their ability to prevent cooled or heated food and beverages from changing temperature over a period of time." U.S. Patent No. 6,068,402, col. 1, lines 7-10. "People use these coolers to carry food and beverages [to] work, to school, to sporting events, to picnics, to go camping, or countless other activities where refrigeration or heating is not easily accessible or possible." *Id.*, col. 1, lines 10-14. In particular, this section of the patent notes, softwalled coolers have become popular because they are lighter weight, more portable, and more comfortable to transport than hardwalled coolers. *Id.*, col. 1, lines 15-19. And "[m]ore recently, softwalled coolers have been manufactured to be able to fold into a smaller package when not in use," allowing the cooler "to be stored and handled more easily when the cooler is not being used to carry food or beverages." *Id.*, col. 1, lines 24-28.

According to the '402 Patent, however, the softwalled coolers on the market at the time had a couple of serious flaws. According to the patent, softwalled coolers (foldable and nonfoldable):

> do not provide the structural support or waterproofing that is commonplace in hardwalled coolers. Structural support is desirable in order to provide ease of movement so that the bottom or floor supporting food and beverages in a softwalled cooler does not sag when the cooler is transported. Waterproofing is also desirable for several reasons. First, when the carrier is used to maintain the temperature of cold items, ice or some other cold medium is used to maintain the cooled temperature. As the ice or other medium melts, water . . . is created which tends to accumulate inside the carrier. Most softwalled carriers tend to leak, as they are sewn together, and the seams become saturated and provide a path for leakage. This leakage may also result in saturation of the thermally insulating material which hinders its ability to provide a thermal barrier.

*Id.*, col. 1, lines 32-46. The invention of the '402 Patent was designed to address both the structural support and the leakage problems. The patent claims a novel softwalled foldable cooler that is less susceptible to leakage because its inside seams are heat sealed, not just sewn. *See id.*, col. 1, lines 62-63, col. 2, lines 5-7. And it claims an additional panel capable of being positioned along the bottom surface of the cooler to provide extra structural support when food and beverages are placed within. *Id.*, col. 1, lines 50-53, col. 2, lines 11-14.

The '402 Patent contains seven claims, all of which are at

3

issue in this lawsuit. Claim one, the first independent claim,

discloses a foldable cooler comprising:

> at least one wall having an upper edge and a
> lower edge, said wall including a first water
> resistant portion covering an inside surface of
> said wall;
> a bottom connected to said lower edge of said
> wall, said bottom have a second water resistant
> portion covering an inside surface of said bottom,
> said first portion and said second portion being
> heat sealed together along at least one connecting
> seam to prevent leakage at said connecting seam,
> said bottom and said wall defining a cavity
> therebetween; and
> a panel positioned in said cavity and
> connected to said lower edge of said wall adjacent
> to said first end of said bottom, said panel having
> a first position and a second position, in said
> first position said panel generally abutting said
> inside surface of said bottom, in said second
> position said panel generally displaced away from
> said inside surface of said bottom, said panel
> being covered by a third water resistant portion,
> said third water resistant portion being heat
> sealed to the first and second water resistant
> portions.

U.S. Patent No. 6,068,402, col. 5, lines 15-34.

Claims 2 and 3 depend from claim 1, and disclose,

respectively, that the third water resistant portion referenced

in claim 1 is "heat sealed to said first and second water

resistant portions at said lower edge of said wall," and "at said

connecting seam." *Id.*, col. 5, lines 35-40.

Claim 4 is identical to claim 1, except that it adds an

insulation feature to the wall element; it claims a foldable

cooler comprising:

> at least one wall having an upper edge and a lower edge, said wall including an insulating material and a first water resistant portion covering an inside surface of said wall;
> a bottom connected to said lower edge of said wall, said bottom and said wall defining a cavity therebetween, said bottom having a second water resistant portion covering an inside surface of said bottom, said first and second portions being heat sealed together along at least one connecting seam to prevent leakage at said connecting seam; and
> a panel positioned in said cavity and connected to a portion of said lower edge of said wall adjacent to said bottom, said panel having a first position and a second position, in said first position said panel generally abutting an inside surface of said bottom, in said second position said panel generally displaced away from said inside surface of said bottom, said panel being covered by a third water resistant portion, said third water resistant portion being heat sealed to the first and second water resistant portions.

U.S. Patent No. 6,068,402, col. 5, lines 42-62.

Claims 5 and 6 depend from claim 4, and disclose, respectively, that the third water resistant portion referenced in claim 4 is "heat sealed to said first and second water resistant portions at said lower edge of said wall," and "at said connecting seam." *Id.*, col. 6, lines 1-6.

Claim 7, the last claim of the '402 Patent, also discloses a foldable cooler, but in greater detail. It claims a cooler comprising:

> a front wall, a back wall, and side walls, each said wall having an upper edge and a lower edge, each said wall including a first water resistant portion

5

covering an inside surface of each said wall including
an insulating material, said front wall defining a
front wall height between said upper edge of said front
wall and said lower edge of said front wall;

a bottom connected to said lower edge of said
wall, said bottom having a second water resistant
portion covering an inside surface of said bottom, said
bottom defining a bottom length between said lower edge
of said front wall and said lower edge of said back
wall, said bottom and said wall defining a cavity
therebetween;

a panel positioned in said cavity and connected to
said lower edge of said wall adjacent to said bottom,
said panel having a first position and a second
position, in said first position said panel generally
abutting an inside surface of said bottom, in said
second position said panel generally abutting an inside
surface of said front wall, said panel being covered by
a third water resistant portion, said panel being
generally rigid and including an insulating material,
said panel defining a panel length being generally
equal to said front wall height, and said panel length
being generally equal to said bottom length;

a flap extending from said upper edge of said back
wall, said flap having a pair of straps extending
therefrom, said straps capable of being connected to an
inside surface of said flap, said flap including an
insulating material;

said first and second water resistant portions
being heat sealed together along connecting seams to
prevent leakage at said connecting seams, said third
water resistant portion being heat sealed to said first
and second water resistant portions at said lower edge
of said front wall along a connecting seam;

said cooler having an open position and a folded
position, said side walls and said bottom being
foldable;

in said open position, said side walls and said
bottom being unfolded, said panel being in said first
position, said straps connected to said inside surface
of said flap, said flap capable of covering said cavity
and attaching to said upper edges of each said wall by
a zipper, thereby closing said cooler; and

in said folded position, said side walls and said
bottom being folded, said panel being in said second

6

position, said flap capable of covering said cavity and an outside surface of said front wall, said straps being connected to an outside surface of said back wall, thereby closing said cooler.

U.S. Patent No. 6,068,402, col. 6, lines 8-61.

Arctic Zone sued Ingear on May 13, 2002, alleging infringement of all of these claims. Specifically, Arctic Zone alleged that Ingear was making foldable coolers that embody the patented invention, and that it was selling them under the trade names "FROZN," "S2," and "SPACESAVER." *See* First Amended Complaint, ¶8. The parties consented to proceed before a magistrate judge, and the case was assigned to this Court on March 24, 2003. Shortly thereafter, Arctic Zone filed a motion for summary judgment on the issue of infringement. Ingear responded to that motion, and, in addition, filed its own motion for summary judgment, arguing that it cannot, as a matter of law, be liable for any infringement of the '402 Patent because the patent is invalid. The Court considers both motions below.

## DISCUSSION

A. Summary Judgment Standards

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

7

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The mere existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Id.* at 247-48. Although the moving party bears the initial burden of proving that there is no genuine issue of material fact, the nonmoving party must present more than a "metaphysical doubt as to the material facts" to survive summary judgment. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See Anderson,* 477 U.S. at 255. The Court may not make "credibility determinations nor choose between competing inferences." *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1041 (7th Cir. 1993).

In addition, under this Court's Local Rule 56.1, the parties must support all disputed facts with "specific references to . . . parts of the record. . . ." The Court need not "scour the record" in an attempt to locate the relevant information

supporting the parties' claims. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

## B.    Issues Raised By the Parties' Motions

The above summary judgment standards apply in patent cases, just as they do in other cases. But patent cases sometimes require an added layer of analysis: claim construction. The claims of a patent "define the scope of the right to exclude," *Renishaw, PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1248 (Fed. Cir. 1998), and "the language of the claims frames and ultimately resolves all issues of claim interpretation." *AbTox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997). Thus, before the Court can determine whether the accused product actually contains each and every element of a given claim (a necessary part of resolving the summary judgment motion on infringement), and before the Court can determine whether the claimed invention was anticipated in the prior art or obvious as a matter of law (a necessary part of resolving the summary judgment motion on invalidity), the Court must first determine the exact nature and scope of the patent's claims. *See Rockwell Intern. Corp. v. U.S.*, 147 F.3d 1358, 1362 (Fed. Cir. 1998) (any infringement or invalidity analysis begins with claim construction).

### 1.  Claim Construction

The construction of the claims of a patent is a question of law to be determined by the Court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995).  The Court's analysis in this regard begins with the actual words of the claim.  *See Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002).  In addition to the claim language, the Court may consider the patent specification and the patent's prosecution history, if in evidence.  *Id.* at 1324-25.  Claims are construed objectively, without reference to the accused device, and only to the extent necessary to resolve the controversy between the parties.  *Vivid Technologies, Inc. v. American Science*, 200 F.3d 795, 803 (Fed. Cir. 1999).  Moreover, "[i]n the absence of an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning," which is "determined from the standpoint of a person of ordinary skill in the relevant art."  *Teleflex*, 299 F.3d at 1325.

Initially, the Court notes that the nature of the parties' dispute on claim language is somewhat unclear.  At various points in their briefs, the parties indicate that they dispute five claim terms: "first position"; "second position"; "folded"; "open position"; and "folded position."  But, as the Court will explain, when carefully parsed, the parties' arguments suggest

that they may actually agree on much of what they claim to
dispute.

Arctic Zone has asked the Court to construe three terms:
"first position"; "second position"; and "folded."  Ingear agrees
that the Court should construe "first position" and "second
position," though it claims to disagree with Arctic Zone's
proposed constructions of these terms.  And Ingear disagrees that
"folded" should be construed; instead, Ingear argues, the Court
should construe the claim term "folded position," and its
counterpart in the claims, "open position."  Arctic Zone seems to
concede that the Court should construe "folded position" and
"open position."  Thus, all in all, five claim terms are arguably
in need of construction.

           a.   "First Position" and "Second Position"

Generally, the '402 Patent discloses a foldable cooler
featuring a panel that is attached to the bottom on the inside of
the cooler; the panel swings down to provide structural support
when the cooler is open (the "first position"), and then swings
back up to lay against the back wall of the cooler to allow the
cooler to fold (the "second position").  Thus, these two
allegedly disputed claim terms relate to the panel: claims 1, 4
and 7 all disclose a "panel having a first position and a second
position . . . .".  U.S. Patent No. 6,068,402, col. 5, lines 27-

28, 56-57; col. 6, line 26.

Arctic Zone argues that the claim term "first position" should be construed to mean "the condition where the panel generally abuts the inside surface of the bottom to allow the cooler to be open." Ingear contends that this construction is too broad, because it omits a crucial qualifier: that the panel is also connected to the joint between one of the cooler's walls and the bottom in the inside of the cooler. Thus, Ingear urges the Court to construe "first position" to mean "the condition where the panel is connected to one wall at the lower edge adjacent to an end of the bottom and generally abuts the inside surface of the bottom of the cooler to be open."

Arctic Zone seems to agree that the additional qualifier inserted by Ingear is, in fact, a part of the claims using the term "first position." But, Arctic Zone argues, that qualifier, i.e., the requirement that the panel is connected to the joint between the wall and the bottom of the cooler, is already part of the claims, and it, therefore, need not be added again. The Court agrees. With respect to the panel, claim 1 discloses "a panel positioned in said cavity and connected to said lower edge of said wall adjacent to said first end of said bottom, said panel having a first position and a second position . . . ." U.S. Patent No. 6,068,402, col. 5, lines 25-28. Similarly, claim

4 discloses "a panel positioned in said cavity and connected to a portion of said lower edge of said wall adjacent to said bottom, said panel having a first position and a second position . . . ." *Id.*, col. 5, lines 54-56. And claim 7 discloses "a panel positioned in said cavity and connected to said lower edge of said wall adjacent to said bottom, said panel having a first position and a second position . . . ." *Id.*, col. 6, lines 23-25. Thus, any reference to the panel's position necessarily assumes that the panel is connected to a wall within the cooler's cavity. To the extent the parties disagree about this, the Court agrees with Arctic Zone that reading this "connected to" qualifier into the disputed claim language would be redundant. Accordingly, the Court adopts Arctic Zone's construction of the claim term "first position."

The parties' perceived dispute about the claim term "second position" is the same as the dispute about the claim term "first position." Arctic Zone asks the Court to construe the term to mean "the condition where the panel is generally displaced away from the bottom to allow the cooler to be folded"; and Ingear urges the Court to insert the phrase "connected to the lower edge of one wall adjacent to the end of the bottom and is" after the word "is" in Arctic Zone's definition. For the reasons just explained, the Court declines to insert this language, which is

13

already very much part of the claim, and adopts Arctic Zone's construction of the term "second position" as well.

b. <u>"Folded," "Folded Position," and "Open Position"</u>

The terms "folded," "folded position," and "open position" appear in only claim 7, and they refer to the cooler generally: the claim discloses a "cooler having an open position and a folded position . . . ." U.S. Patent No. 6,068,402, col. 6, line 47.

Arctic Zone asks the Court to construe "folded" on its own and in accordance with its plain and ordinary meaning. To this end, Arctic Zone argues that "folded" should be construed to mean "to reduce the length or bulk of by placing together or bending over so that one part lies flat on another part." Ingear does not dispute that "folded" carries its ordinary meaning in the patent. But, Ingear argues, the relevant claim term to be construed is not "folded," but "folded position." To the extent the construction differs, the Court agrees that the word "folded" must be construed in the context of the claims, which use the term in connection with the broader claim term "folded position." *See, e.g.,* U.S. Patent No. 6,068,402, col. 6, lines 56-57 ("in said folded position, said side walls and said bottom being folded . . . ."). Accordingly, the Court will construe the claim term "folded position," recognizing in the process that the

14

"folded" part of that claim term must be given its ordinary meaning.

The parties agree that the claim term "folded position" should be construed "to refer to the state where the cooler does not function as a cooler, but instead is collapsed into a generally flat state for storage." Ingear wants the Court to find that, in the "folded position,"

> the walls and bottom of the cooler are folded inward,
> eliminating the interior cavity of the cooler, the
> panel is lifted upward to a vertical (or "second")
> position, and the flap extends across the front
> exterior wall of the cooler. The straps in the "closed
> position" extend from the edges of the flap around the
> folded side walls to the outside of the back wall and
> maintain the cooler in the "folded position" by means
> of velcro tabs.

Ingear's Combined Memorandum, p. 5. Arctic Zone concedes that this description is consistent with the plain language of claim 7. But, it argues, given that language to this effect is already part of the claim, the Court need not paraphrase or further interpret the language. The Court agrees.

Claim 7 discloses a cooler "having an open position and a folded position," and it describes what happens in each of those positions. In the "folded position," "said side walls and said bottom being folded, said panel being in said second position, said flap capable of covering said cavity and an outside surface of said front wall, said straps being connected to an outside

15

surface of said back wall, thereby closing said cooler." U.S. Patent No. 6,068,402, col. 6, lines 56-61. Given this language, the Court agrees with Arctic Zone that the claim term "folded position" need not be construed in the manner Ingear seems to suggest. It is enough to say that the claim term "folded position" refers to the state, as described in claim 7, where the cooler does not function as a cooler, but instead is collapsed into a generally flat state for storage.

The parties have a similar dispute about the claim term "open position." They generally agree that the term "open position" "refers to the state where the invention functions as a cooler, with the walls and floor extended to their full dimension." And the claim language explains how that position is accomplished:

> in said open position, said side walls and said bottom being unfolded, said panel being in said first position, said straps connected to said inside surface of said flap, said flap capable of covering said cavity and attaching to said upper edges of each said wall by a zipper, thereby closing said cooler . . . .

U.S. Patent No. 6,068,402, col. 6, lines 49-54. As with the claim term "folded position," the Court construes the claim term "open position" to mean the state, as described in claim 7, where the invention functions as a cooler.

Having construed the disputed claims, the Court is equipped

16

to address Arctic Zone's allegation that the accused coolers infringe these claims, and to address Ingear's allegation that these claims render the '402 Patent invalid.

### 2. Arctic Zone's Infringement Claim

A determination of infringement requires a two-step analysis: the first step is to construe the disputed claims; the second step is to compare the properly construed claims to the accused product to determine whether all of the claim limitations are present, either literally (in which case literal infringement is said to exist) or by a substantial equivalent (in which case infringement is said to exist under the doctrine of equivalents). *See, e.g., RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255, 1266 (Fed. Cir. 2003); *Markman*, 52 F.3d at 976. Arctic Zone has alleged that the elements of claims 1 through 6 are present literally in Ingear's coolers, and that the elements of claim 7 are present literally or by a substantial equivalent in Ingear's coolers; in other words, it alleges both literal infringement and infringement under the doctrine of equivalents. The Court considers these allegations in turn.

### a. Literal Infringement

Literal infringement exists when every claim limitation "reads on," or is found in, the accused device. *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336,

1345 (Fed. Cir. 2002) (citing *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995)). Arctic Zone argues that the accused coolers contain each element of claims 1 through 6. Arctic Zone first claims that Ingear's coolers feature four walls (a front wall, a back wall and two side walls), each having an upper edge and a lower edge, a water resistant covering for its inside surface and an insulating material within the water resistant covering. *See* Arctic Zone's Statement of Facts, ¶8. And Ingear admits that this is so. *See* Ingear's Response to Arctic Zone's Statement of Facts, ¶8.

Arctic Zone also claims that Ingear's coolers include a bottom connected to the lower edge of its four walls to form a cavity, that the bottom also has a water resistant inside surface, and that the seams between the bottom and the walls all are heat sealed. *See* Arctic Zone's Statement of Facts, ¶9. Again, Ingear admits that this is so. *See* Ingear's Response to Arctic Zone's Statement of Facts, ¶9.

Finally, Arctic Zone claims that Ingear's coolers include a panel that: (1) is positioned in the cavity, (2) is connected to the lower edge of the back wall adjacent to the bottom, (3) has a water-resistant covering and insulating material within that covering, (4) is heat sealed at the seam at the bottom, and (5) has a first position, wherein the panel abuts the inside surface

18

of the bottom when the cooler is opened, and a second position, wherein the panel is displaced away from the inside surface of the bottom, up against the inside surface of the back wall and sandwiched between the walls to allow the cooler to be folded flat. *See* Arctic Zone's Statement of Facts, ¶10. Here, Ingear denies part of the claim: it contends that the panel in its coolers is removable, not connected to the back wall. Given that the connection is an essential element of claims 1 through 6, this distinction would be enough to defeat Arctic Zone's claim of infringement. It is clear, however, that this distinction in the panels did not always exist, and that some versions of Ingear's coolers actually contained a connected panel. According to Lawrence Gutkin, Ingear's President and CEO, Ingear's coolers did, at one time, feature a panel that was connected to the interior liner of the cooler. *See* Declaration of Lawrence M. Gutkin, ¶4 (attached as Exhibit 1 to Ingear's L.R. 56.1(B) Statement). But, in September 2002, Ingear modified its coolers to feature a panel that is "completely unattached and merely fits inside the cooler." *Id.*

Arctic Zone did not respond to the modification issue. But, based on the evidence before it, the Court finds that the version of Ingear's coolers featuring the connected panel (i.e., the version made before roughly September 2002) literally infringes

or infringed claims 1 through 6 of the '402 Patent. The version of Ingear's coolers featuring a removable panel does not infringe the patent. Thus, to the extent Arctic Zone is seeking summary judgment of infringement with respect to the unmodified coolers (i.e., those with connected panels), the Court will grant the motion.

b. <u>Infringement Under the Doctrine of Equivalents</u>

In addition to its claim that Ingear's coolers literally infringe claims 1 through 6, Arctic Zone alleges that Ingear's coolers infringe claim 7 under the doctrine of equivalents. Claim 7 discloses a foldable cooler featuring the wall, bottom and panel elements disclosed in the other independent claims. But it also adds some new elements to the mix, specifically, a flap and straps. Arctic Zone alleges that these elements, like the elements that overlap with those in claims 1 through 6, are similarly present in Ingear's coolers, and, for the most part, Ingear admits that this is so. *See* Arctic Zone's Local Rule 56.1 Statement of Facts, ¶¶11-12, and Ingear's responses thereto.

The only real issue with respect to claim 7 concerns the straps: the record shows that the straps on Ingear's coolers are not positioned in the same way as the straps on the patented cooler. The question for the Court, therefore, is whether this difference precludes a finding of infringement under the doctrine

20

of equivalents.

"Under the doctrine of equivalents, a claim limitation not literally met may be satisfied by an element of the accused product if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Boehringer Ingelheim v. Schering-Plough Corp.*, 320 F.3d 1339, 1351 (Fed. Cir. 2003) (citing *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 40 (1997); *Eagle Comtronics v. Arrow Communication Laboratories, Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002)). To assess insubstantiality, the Court may consider "whether the element in the accused device 'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." *Id.* (quoting *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950); *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 813 (Fed. Cir. 2002)). Thus, the Court's task is to assess whether the difference in the straps on the two coolers is substantial, or whether the straps on Ingear's cooler perform substantially the same function in substantially the same way to obtain the same result as the limitation in claim 7.

The '402 Patent discloses a "flap having a pair of straps extending therefrom, said straps capable of being connected to an

inside surface of said flap . . . ." U.S. Patent No. 6,068,402, col. 6, lines 37-39. When the cooler is in the open position (i.e., when the cooler is functioning as a cooler, ready to hold food and beverages), the straps serve no function; they are simply "connected to [the] inside surface of [the] flap" that serves as the cooler's lid. *Id.*, col. 6, lines 51-54. On the other hand, when the cooler is in the folded position (i.e., collapsed into a generally flat state for storage), the straps do have a function: they serve to hold the flap down over the cooler to keep it closed. The straps, which are attached to the flap on one end, are then "connected to an outside surface of [the] back wall, thereby closing [the] cooler." *Id.*, col. 6, lines 59-61.

The description of the preferred embodiment further supports these findings concerning the purpose of the straps:

> A pair of straps 72, 74, which are attached to the flap 28, respectively wrap around the left side wall portion 22c and the right side wall portion 22d to connect to a left hook and loop fastener (not shown) and a right hook and loop fastener 76 located on the outside layer 34 of the back wall portion 22b. When cooler 20 is in its folded configuration 70 with the flap 28 closing the cooler 20 is in a very compact package making it easy to store or carry in comparison to a cooler that does not fold. When the flap 28 is not closing the cooler 20, the straps 72, 74 may be connected to a hook and loop fastener 80 located on the inside layer 50 of the flap 28.

U.S. Patent No. 6,068,402, col. 4, line 58 - col. 5, line 2.

The evidence in the record demonstrates that, for the most

22

part, Ingear's coolers feature straps that are not connected to the inside surface of the flap; rather, they are connected to the outside surfaces of the side walls when the cooler is in the open position.[1] *See* U.S. Patent No. 6,068,402, col. 6, lines 38-39, 50-51; Arctic Zone's Local Rule 56.1 Statement of Facts, ¶12, and Ingear's response thereto. Nevertheless, Arctic Zone argues, the straps on Ingear's cooler serve the exact same function as the straps on the patented cooler. According to Arctic Zone, "whether the straps extend from the flap or the front wall is inconsequential – the straps still perform the same function in substantially the same way to achieve the same result, i.e., hold the cooler flat in the folded position." Arctic Zone's Memorandum in Support of its Motion for Summary Judgment, p. 14. To support this claim, Arctic Zone submitted a photograph of Ingear's cooler, showing that the straps actually serve to hold the cooler in its folded position.

Ingear does not dispute that, in the folded position, its straps serve substantially the same function in substantially the same way to achieve the same result. But, it argues, the Court

---

[1]It appears that at least one model of Ingear's cooler features straps that are attached to the *inside* of the flap. Curiously, Arctic Zone has not seized upon this point to launch a literal infringement claim, choosing instead to proceed under the doctrine of equivalents.

must also consider what the straps do in the open position, since that position is also defined in the claim. Ingear argues that, when the cooler is in the open position, its straps serve a different function than do the straps on the patented cooler: because they are on the outside of the cooler, they stay clean and dry, whereas the straps on the patented cooler, stored inside the cooler, may become damp and soiled. The Court recognizes that this evidence establishes that there is a difference between the straps on Ingear's coolers and the patented coolers. But, contrary to Ingear's characterization, the difference has nothing to do with function; the difference concerns solely the positioning or placement of the straps when they are being stored, when they are not functioning.

A change in position of a particular feature may be substantial. But that appears to be true only where the change in position or placement affects that feature's function. For example, in *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563 (Fed. Cir. 1996), a patent case involving interferometers,[2] the district court found that the accused device infringed the patented

---

[2]According to the Merriam-Webster online dictionary, an interferometer is "an instrument that utilizes the interference of waves (as of light) for precise determinations (as of distance or wavelength)." *See* http://www.m-w.com/cgi-bin/dictionary.

invention under the doctrine of equivalents, even though a
particular component part of the device was located in a
different place. *Id.* at 1566. The Federal Circuit agreed,
holding that "the substituent need not be in the exact same
location specified by the claim. If, in the context of the
invention, the substituent substantially performs the same
function to achieve the same result in the same way as the
required limitation, that limitation is satisfied." *Id.* at 1568
(citing *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*,
868 F.2d 1251 (Fed. Cir. 1989)). The court found that, despite
the move, the part functioned in the same way, and it therefore
affirmed the finding of infringement under the doctrine of
equivalents. *Id.* at 1569. Conversely, the court found that
another version of the accused device did not infringe under the
doctrine of equivalents because, regardless of the placement of
the part, the parts operated in different ways to achieve the
desired result. *Id.* That is not the case here.

Ingear's straps achieve the same result in the same way as
do the straps on the patented invention. The only difference is
in the placement of the particular parts, and, under *Zygo* and
*Corning Glass*, that is not enough to preclude infringement under
the doctrine of equivalents. The Court acknowledges that
Ingear's straps have the added benefit of staying dry and clean

while the cooler is functioning as a cooler. But this improvement does not alter the result; if a claimed feature performs as shown in the patent, improvements to the feature will not avoid infringement. *See Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 945 (Fed. Cir. 1990), *cited in Vulcan Engineering Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1375-76 (Fed. Cir. 2002).

Because the straps on both coolers function in substantially the same way to achieve the same result, the Court finds that the strap element is present by a substantial equivalent in the accused cooler. Accordingly, the Court finds that Arctic Zone is entitled to summary judgment on its infringement claim with respect to claim 7.

### 3. Ingear's Invalidity Defense

Having concluded that Ingear's coolers infringe the claims of the '402 Patent, the Court must consider Ingear's claim that the patent is invalid. If Ingear prevails on this claim, it cannot be liable for infringement. *See* 35 U.S.C. §282 (invalidity is a defense to infringement).

A patent is presumed to be valid, and the party challenging the patent's validity bears the burden of proving the patent's invalidity by clear and convincing evidence. 35 U.S.C. § 282; *Oakley, Inc. v. Sunglass Hut International*, 316 F.3d 1331, 1339

(Fed. Cir. 2003); *Boehringer*, 320 F.3d at 1353.  Ingear argues
that the entire '402 Patent is invalid.  It argues that claims 1
through 6 are invalid under 35 U.S.C. §102(b) because they were
anticipated in the prior art, and it argues that claim 7 is
invalid under 35 U.S.C. §103 because it was obvious when
conceived.  The Court addresses each argument in turn.

     a.   <u>Anticipation</u>

"Invalidity based on 'anticipation' requires that the
invention is not in fact new." *Verve, LLC v. Crane Cams, Inc.*,
311 F.3d 1116, 1120 (Fed. Cir. 2002) (citing *Hoover Group, Inc.
v. Custom Metalcraft, Inc.*, 66 F.3d 299, 302 (Fed. Cir. 1995)).
For a prior art reference to have anticipated the patented
invention, it must disclose every limitation of the claimed
invention, either explicitly or inherently.  *Telemac Cellular
Corp v. Topp Telecomm, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir.
2001).  The prior art reference must describe the claimed
invention with sufficient precision and detail to establish that
the subject matter existed in the prior art, to show that a
person with ordinary skill in the field of the invention would
have been in possession of the invention. *Verve*, 311 F.3d at 1120
(citing *In re Spada*, 911 F.2d 705, 708 (Fed. Cir. 1990).  If the
limitations are claimed to be inherent (not explicit) in the
prior art, the prior art must function in accordance with, or

include, the claimed limitations. *Telemac*, 247 F.3d at 1327
(citing *MEHL/Biophile International Corp. v. Milgraum*, 192 F.3d
1362, 1365 (Fed. Cir. 1999)).

"Whether a claim limitation is inherent in a prior art
reference is a question of fact." *Id.* at 1328 (citing *In re
Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997)). In fact,
anticipation generally is a question of fact, but summary
judgment on the issue may nonetheless be appropriate "if the
record reveals no genuine dispute of material fact." *Telemac*,
247 F.3d at 1327. That is not the case here.

Ingear argues that softwalled collapsible coolers featuring
a flip-up floor panel were manufactured and sold as early as
1993. *See* Ingear's Combined Memorandum, p. 6. And it has
supplied the Court with what it claims are three examples of such
coolers. Ingear submitted: (1) a blue and white striped cooler,
purportedly manufactured beginning in 1993 by Silverplay
International for Ero Industries, Inc., d/b/a Chill (Ingear's
Demonstrative Exhibit 8); (2) an "NFL" cooler bearing the logo of
the Minnesota Vikings, purportedly manufactured by Ero in 1994
(Ingear's Demonstrative Exhibit 9); and (3) a "Coral Reef"
cooler, purportedly manufactured and sold by Chill in 1996
(Ingear's Demonstrative Exhibit 10). These coolers
unquestionably include the flip-up floor panel. But, at least

based upon the Court's manipulation, which is all Ingear has left the Court to rely upon, the coolers do not appear to be "foldable" in the same sense that the patented invention is "foldable"; rather, they are collapsible or crushable, which is simply not the same thing in this context.

Ingear submitted an affidavit from David Anderson, who developed cooler products for Ero Industries from 1993 to 1996. Mr. Anderson describes the coolers Ingear submitted to the Court, and he states that coolers just like them were sold within the United States throughout the early to mid-1990s. *See* Affidavit of David Anderson, ¶¶3-10 (attached as Exhibit 2 to Ingear's Local Rule 56.1(B) Statement of Facts). Mr. Anderson states that each of the coolers had a flip-up panel, which was connected to the lower edge of the back wall adjacent to the inside surface of the bottom, and which had a first position (in which the panel sat flat on the inside surface of the bottom) and a second position (in which the panel was displaced away from the bottom to become generally adjacent to the inside surface of the wall); he states that the panels and inside surfaces of the coolers were covered with a water resistant material; and he states that the panels were heat sealed to the water resistant material in the cooler cavities at the lower edges of the walls. *See id.*, ¶¶3, 6-7 (the blue and white striped cooler), ¶8 (the NFL cooler), ¶10

(the Coral Reef cooler). Mr. Anderson never says, however, that any of these coolers was foldable.

Nor do Ingear's other witnesses. Lawrence Gutkin, Ingear's President and CEO, states that one of Ingear's competitors in the cooler market, California Innovations, was making a "*collapsible* cooler," *see* Declaration of Lawrence M. Gutkin, ¶5 (attached as Exhibit 1 to Ingear's Local Rule 56.1(B) Statement of Facts), but the Court has no basis to find that, by "collapsible," Mr. Gutkin meant "foldable." Simon Tang, President of Silverplay International, which manufactures softwalled coolers, also describes coolers like those submitted by Ingear; like Mr. Anderson, he refrains from calling them foldable. *See* Declaration of Simon Tang, ¶¶3, 10. Mr. Tang does state that, by 1994, California Innovations, the competitor Mr. Gutkin mentioned, was making "foldable" coolers. *See id.*, ¶13. But he concedes that those coolers did not contain a flip-up panel, *see id.*, which would defeat any anticipation claim based on these coolers. *See Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1321-22 (Fed. Cir. 2003)("Anticipation under 35 U.S.C. §102 requires that a single prior art reference disclose each and every limitation of the claimed invention.")(citing *Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1052 (Fed. Cir. 1994)).

30

Ingear argues that the foldable issue plays no role in the Court's analysis involving claims 1 through 6 because those claims do not mention the words "fold," "foldable," "folded," or "folded position"; rather, this element is added in claim 7 only. The Court disagrees. Although it is true that claims 1 through 6 do not expressly include the folded language, claims must be read in view of the specification of which they are a part. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Here, the specification plainly reveals that the inventions disclosed in the patent all are foldable - indeed, the patent is expressly entitled "Foldable Cooler," the drawings included in the patent all show coolers that are expressly identified as being "foldable," and each section of the patent (the abstract, the background of the invention section, the objects and summary of the invention section, and the description of the preferred embodiment) emphasizes this feature. *See, e.g.,* U.S. Patent No. 6,068,402, abstract ("[t]he present invention provides a novel *foldable* softwalled cooler . . . .); col. 1, lines 4-5 ("[t]he present application pertains to *foldable*, flexible walled coolers . . . ."); col. 1, lines 50-51 ("[a] general object of the present invention is to provide a *foldable* softwalled cooler . . . ."); col. 2, lines 29-30 ("Fig. 1 is a perspective view of a *foldable* cooler . . . .")(emphasis added).

Simply, nothing in the patent suggests that it was intended to disclose a cooler that would not be considered foldable. Accordingly, the Court rejects Ingear's contention that the foldable feature comes into play only in claim 7, and finds that it is a necessary part of claims 1 and 4 as well.

Having said this, the Court notes that foldable coolers unquestionably existed when the application for what became the '402 Patent was filed – the patent itself establishes as much. U.S. Patent No. 6,068,402, col. 1, lines 24-26 ("More recently, softwalled coolers have been manufactured to be able to fold into a smaller package when not in use."). And, as the Court noted above, Simon Tang states that California Innovations was making foldable coolers by 1994. See Tang Declaration, ¶13. But the Court has no basis to conclude that the foldable coolers referenced in the specification, or the foldable coolers manufactured by California Innovations, included a flip-up panel. And the Court has no basis to conclude that the coolers Ingear introduced, which do feature the flip-up panel, are foldable. In short, Ingear has provided no single prior art reference that reads on every single limitation in any claim of the '402 Patent, as the Court has construed those claims. That is not to say that no prior art reference actually does so; but issues of fact

remain as to whether this is the case.[3]  Based on the record

before it, the Court cannot find that claims 1 through 6 of the

patent were anticipated in the prior art.

      b.   Obviousness

Ingear argues that claim 7 of the '402 Patent contains three

basic elements: a flip-up panel, a flap that serves as the

cooler's lid, and the straps that hold the cooler closed in the

folded position.  *See* Ingear's Combined Memorandum, p. 13.

Ingear further argues that the flip-up panel and the use of

straps to hold a foldable cooler closed were both well known in

the cooler market long before Arctic Zone applied for its patent,

and that the combination of these two elements would have been

obvious to anyone skilled in the art of cooler design.  *Id.*, pp.

13-14.

"Obviousness is a legal conclusion based on underlying facts

of four general types, all of which must be considered by the

trier of fact: (1) the scope and content of the prior art; (2)

the level of ordinary skill in the art; (3) the differences

between the claimed invention and the prior art; and (4) any

objective indicia of nonobviousness.  *Crown Operations*

---

[3]Issues of fact likely also exist as to whether any of the
coolers Ingear cites were actually "on sale" during the relevant
time period, though, given the deficiencies just noted, the Court
need not say much about the matter at this time.

*International Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed.

Cir. 2002) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18

(1966); *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d

1264, 1270 (Fed. Cir. 1991); *Panduit Corp. v. Dennison*

*Manufacturing Co.*, 810 F.2d 1561, 1566-68 (Fed. Cir. 1987)). The

Court asks whether, based on these factors, the claimed invention

would have been obvious as a legal matter. *See Smiths Industries*

*Medical Systems, Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1354

(Fed. Cir. 1999).

To support its claim of obviousness, Ingear has offered a

prior art patent, U.S. Patent No. Des. 328,550, issued August 11,

1992. The patent (referred to by Ingear as the Mogil Patent,

after the names of its inventors) is entitled "Portable Cooler

Container" and claims "[t]he ornamental design for a portable

cooler container as shown and described." U.S. Patent No. Des.

328, 550 (attached as Exhibit E to Ingear's Combined Memorandum).

This is the full text of the claim language; the patent consists

largely of a series of figures depicting the invention. Those

drawings, however, do not permit the Court to draw any

conclusions about the existence of straps or the purpose such

straps would serve. *See id.* In short, the Mogil Patent, by

itself, would not provide a basis to hold claim 7 invalid. And

Ingear has offered no other evidence to illuminate the claimed

strap element of the Mogil Patent.

Ingear *has* offered Mr. Tang's declaration, which it claims bolsters its obviousness argument. Mr. Tang claims to have been designing and manufacturing softwalled coolers since 1986, and he claims to be "someone experienced and skilled in the art of designing and manufacturing soft sided coolers." Declaration of Simon Tang, ¶¶11, 13. Based on that experience and skill, Mr. Tang opines that:

> it would have been obvious in 1994 to combine the strap features from the [Mogil] patent with the flipup floor shown in the coolers depicted in Exhibits A and D [respectively, the blue and white striped cooler and the NFL cooler]. The combination of these two design elements is not something that would have been novel or unobvious in 1994 to anyone skilled in the art of designing and manufacturing soft-sided coolers.

*Id.* ¶13. Mr. Tang offers nothing further to explain or substantiate his opinion.

Mr. Tang's declaration may be enough to create an issue of fact concerning obviousness. But his statement, which is totally conclusory, utterly without support or explanation, falls considerably short of the clear and convincing evidence mark. A determination of obviousness "cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention." *Crown Operations*, 289 F.3d at 1376 (quoting *ATD Corp. v. Lydall, Inc.*,

159 F.3d 534, 546 (Fed. Cir. 1998)).  Rather, "[t]here must be a teaching or suggestion within the prior art, within the nature of the problem to be solved, or within the general knowledge of a person of ordinary skill in the field of the invention, to look to particular sources, to select particular elements, and to combine them as combined by the inventor."  *Id.* at 1376.  Ingear argues that the problem of keeping foldable coolers in a folded position existed, and that it would have been obvious to solve the problem through the use of straps.  *See* Ingear's Reply Memorandum, p. 14.  But it has offered no evidence to prove that this is so; it has not, for example, offered the testimony of anyone skilled in the art, stating that keeping foldable coolers closed was a problem in the late 1990s.  And Mr. Tang's declaration is not enough to persuade the Court that the prior art would have made the combination of elements claimed in claim 7 obvious (though it is certainly a small step in that direction).

Given the conclusory nature of Mr. Tang's opinion, the Court has no way to assess whether it is the result of something taught in the prior art, or whether it is the result of hindsight. Indeed, Ingear has given the Court no basis to analyze the factual issues taught by *Crown Operations* and *Graham*. Accordingly, the Court declines to invalidate claim 7 on the

36

basis of what Ingear has offered.  *See McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001) (especially where the art in question is relatively simple and the temptation to invalidate by hindsight is particularly tempting, "the tests of whether to combine references need to be applied rigorously.").  The Court finds that issues of fact remain concerning the obviousness of combining the elements of claim 7. Given this finding, and given the Court's findings concerning anticipation, the Court denies Ingear's motion for summary judgment on invalidity.

C.   Ingear's Motion to Strike

In addition to the parties' motions for summary judgment, Ingear filed a motion to strike one section of Arctic Zone's motion, along with the exhibits referenced in that section.  The arguments and exhibits concern Arctic Zone's allegations that Ingear has copied its designs in the past.  The Court agrees that the allegations have no bearing on the infringement or invalidity issues that are the subject of the parties' summary judgment motions, and the Court did not consider the challenged materials in reaching its decisions herein.  The motion to strike is granted.

## CONCLUSION

For the reasons set forth above, the Court grants Arctic Zone's motion for summary judgment that the accused coolers infringe the '402 Patent, and denies Ingear's motion for summary judgment that the claims of the patent are invalid under 35 U.S.C. §§102(b) and 103. The Court grants Ingear's motion to strike.

DATED: August 27, 2003

ENTERED:

ARLANDER KEYS
United States Magistrate Judge

38